Jennifer CEITHAML, Plaintiff,

v.

CELEBRITY CRUISES, INC., Defendant.

Case No. 15-24139-CIV-WILLIAMS

United States District Court, S.D. Florida.

Signed September 14, 2016

Entered September 15, 2016

John H. Hickey, Esq., for Plaintiff.

Carlos J. Chardon and Samantha Loveland of Hamilton, Miller & Birthisel, LLP, for Defendant.

## ORDER

KATHLEEN M. WILLIAMS,
UNITED STATES DISTRICT JUDGE

**THIS MATTER** is before the Court on Defendant Celebrity Cruises, Inc.'s ("Celebrity'") motion to dismiss Plaintiff Jennifer Ceithaml's Complaint. (DE 9; Response DE 11; Reply DE 16). Ceithaml sues Celebrity for injuries she sustained while zip-lining during a shore excursion in Dominica. For the reasons below, Celebrity's motion to dismiss (DE 9) is **GRANTED.**

### I. BACKGROUND [1]

Ceithaml was a cruise passenger aboard the Celebrity *Summit* on December 9, 2014 when she purchased from Celebrity a "zip-line excursion ride" in Dominica run by Wacky Rollers Adventure Vacations and Expeditions, Ltd. ("WRAVE"). (DE 1 ¶ 11). She rode the WRAVE zip-line that same day and suffered a compound fracture of her left ankle when she continued past the ride's landing platform and struck a tree. (DE 1 ¶¶ 38, 49).

Ceithaml claims that when she purchased the ride, she was relying on Celebrity's representations that the ride was safe. (DE 1 ¶ 21). These representations included Celebrity's statement on its website, and by personnel at the *Summits* onboard "excursion desk," that all Celebrity excursions "are planned by insured partners who adhere to the highest safety standards in the industry." (DE 1 ¶¶ 12a, 12j, 15, 16, 18, 20, 21). Ceithaml alleges that Celebrity also implicitly vouches for the safety of its excursions because it offers, promotes, markets, and otherwise organizes and sells tickets for the excursions

---

1. The non-conclusory factual allegations contained in the Complaint (DE 1) are taken as true for purposes of Celebrity's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and are construed in the light most favorable to Ceithaml. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir.2010).

(DE 1 ¶¶ 12b-12g, 23, 24); "arranges for transportation" to the excursion site (DE 1 ¶ 12h); makes excursions "part and parcel" of the cruise vacation experience by providing passengers with literature (DE 1 ¶ 14); uses its logo to market the excursions (DE 1 ¶ 18); selects its excursion operators (DE 1 ¶ 22); has a joint venture and agency relationship with WRAVE (DE 1 ¶¶ 12i, 19, 36, 37); and "receives a substantial amount of income from the sale" of excursions and "in fact splits the excursion revenue with the owner of the excursion" (DE 1 ¶ 25).

Despite these representations, however, Ceithaml claims that the WRAVE zip-line ride was deficient in a number of ways: (1) it had no braking system or emergency brake (DE 1 ¶¶ 30, 31); (2) the landing platform at the end of the ride was "too small for the rider to have adequate space for a landing" (DE 1 ¶ 29); (3) WRAVE failed to train either riders or its employees operating the zip-line (DE 1 ¶ 32-34); and (4) the WRAVE employee assigned to catch her at the zip-line's endpoint was not paying attention (DE 1 ¶ 38). Ceithaml states that these and other deficiencies listed in the Complaint[2] brought the ride well below industry safety standards (DE 1 ¶ 28) and were the proximate cause of her injuries (DE 1 ¶ 38).

Seeking redress for her injuries, Ceithaml filed this lawsuit on November 5, 2015 alleging five putative causes of action against Celebrity: (1) direct negligence in choosing and monitoring WRAVE; (2) negligent misrepresentation in its literature, in onboard media, and on its website regarding the safety and quality of the WRAVE zip-line ride; (3) vicarious liability resulting from the negligence of its joint venture partner WRAVE; (4) vicarious lia-

bility resulting from the negligence of its apparent agent WRAVE; and (5) vicarious liability resulting from the negligence of its actual agent WRAVE. On December 9, 2015, Celebrity moved to dismiss all counts for failure to state a claim.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The Court's consideration is limited to the allegations presented. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir.2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir.1998). Nevertheless, while a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted). "Additionally, 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.' " *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 Fed. Appx. 783, 792–93 (11th Cir.2014) (*quoting*

---

**2.** In alleging "direct" negligence (Count 1) and negligent misrepresentation (Count 2), Ceithaml lists 34 ways in which Celebrity was negligent in taking certain actions and failing

to take others. (DE 1 ¶¶ 54, 65). In alleging vicarious liability (Counts 3, 4, and 5), Ceithaml lists 28 ways in which WRAVE was negligent. (DE 1 ¶¶ 79, 85, 96).

*Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir.2003)). The "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.2007) (quoting *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955).

In addition to the requirements of *Twombly, Iqbal*, and Federal Rules of Civil Procedure 8(a) and 12(b)(6), claims sounding in fraud are subject to the pleading standards of Federal Rule of Civil Procedure 9(b). *See U.S. ex. rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309–10 (11th Cir.2002); *Gayou v. Celebrity Cruises, Inc.*, No. 11–23359–CIV, 2012 WL 2049431, at *3 (S.D.Fla. June 5, 2012). That rule provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other condition of mind of a person shall be averred generally." Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied if the plaintiff pleads "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)).

## III. DISCUSSION

As an initial matter, the Court—like Celebrity—has difficulty discerning which causes of action Ceithaml intends to bring and which facts are relevant to Ceithaml's claims. This confusion is attributable to two features of the Complaint.

First, the Complaint separates multiple theories of negligence into different causes of action based on whether the claim sounds "directly" in Celebrity's negligence (Counts 1 and 2) or "vicariously" in WRAVE's negligence (Counts 3, 4, and 5). Theories of vicarious liability, however, are not independent causes of action; instead, they are theories of liability for other claims. *See Barabe v. Apax Partners Europe Managers, Ltd.*, 359 Fed.Appx. 82, 84 (11th Cir.2009) (affirming district court's dismissal of "Joint Venture" and "Agency Relationship" counts because these counts "do not plead independent causes of action"); *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 n. 1 (11th Cir.2001) ("In Florida, a private person would be liable for its agent's acts occurring within the scope and course of the agency relationship, so long as those acts breached a duty of care owed to the plaintiff and that breach caused the plaintiff to suffer damages.") (citing *Bennett v. Godfather's Pizza, Inc.*, 570 So.2d 1351 (Fla.App.3d Dist. Ct.1990)); *Flaherty v. Royal Caribbean Cruises, Ltd.*, 15–22295–CIV, 2015 WL 8227674, at *6 (S.D.Fla. Dec. 7, 2015) ("actual and apparent agency are not independent causes of action, but instead theories of liability") (citations omitted).

Second, the Court has difficulty discerning which facts are relevant to Ceithaml's claims because Ceithaml's 42-page Complaint lists—without any factual context— 34 breaches of duty in support of the negligence and negligent misrepresentation claims (DE 1 ¶¶ 54, 65) and 28 breaches of duty in support of the three vicarious liability claims (DE 1 ¶¶ 79, 85, 96). What few relevant facts Ceithaml alleges about her injury are insufficiently matched to these shotgun-style recitations, making any meaningful assessment of her claims difficult. If Ceithaml chooses to file an amended complaint, she might heed the counsel of another court of this District

reviewing a claim against a cruise line for injuries suffered during a shore excursion:

> The Court refuses to go line-by-line and determine which of Carnival's alleged breaches are appropriate and supported by law; rather, the burden will remain on Plaintiff to review her Complaint and ensure that each factual allegation is supported by law and plausible facts, and is alleged in good faith.

*Brown v. Carnival Corp.*, No. 1:16–CV–21448-UU, 202 F.Supp.3d 1332, 1338, 2016 WL 4613385, at *3 (S.D.Fla. Aug. 15, 2016).

Because of these two overarching pleading issues, Ceithaml has failed to provide Celebrity with fair notice of what her claims are and has failed to provide a "short and plain statement of the claim showing that the pleader is entitled to relief" as the Federal Rules of Civil Procedure require. *See* Fed. R. Civ. P. 8(a)(2). This is an independent ground for dismissal. *Thompson v. Carnival Corp.*, No. 1:15–CV–24115–KMM, 174 F.Supp.3d 1327, 1341, 2016 WL 1242280, at *9 (S.D.Fla. Mar. 30, 2016) (dismissing complaint premised on the "'unadorned, the-defendant-unlawfully-harmed me accusation[s]' that Rule 8 seeks to prevent") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Harding v. NCL (Bahamas) Ltd.*, 90 F.Supp.3d 1305, 1308 (S.D.Fla.2015). Nevertheless, the Court explains below why each of Ceithaml's claims fails under governing federal maritime law.[3]

## A. Negligence and Negligent Misrepresentation Claims

### 1. Count 1: "Direct Negligence in Choosing and in Monitoring"[4]

■ Ceithaml first alleges that Celebrity is liable for "direct negligence in choosing and monitoring" WRAVE as its excursion operator. (DE 1 ¶¶ 42-57). However, the Complaint alleges no facts supporting Celebrity's duty of care or failure to warn and instead attempts to impose a heightened duty unsupported by federal maritime law. Moreover, to the extent Count 1 attempts to state a claim for negligent hiring and retention, it fails to do so.

■ To state a claim for negligence against a shipowner, a plaintiff "must show: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages." *Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1236 (S.D.Fla.2006) (citing *Hasenfus v. Secord*, 962 F.2d 1556, 1559–60 (11th Cir.1992)); *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir.2012) ("In analyzing a maritime tort case, we rely on general principles of negligence law.") (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir.1980)). Pursuant to federal maritime law, the duty of care that cruise operators owe passengers is ordinary reasonable care under the circumstances, "which requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition." See *Keefe v. Ba-*

---

3. "[F]ederal maritime law applies to actions arising from alleged torts 'committed aboard a ship sailing in navigable waters.' " *Wolf v. Celebrity Cruises, Inc.*, 101 F.Supp.3d 1298, 1305 (S.D.Fla.2015) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir.1989)). This rule extends to torts occurring at offshore locations during the course of a cruise. *See Smolnikar v. Royal Caribbean*

*Cruises Ltd.*, 787 F.Supp.2d 1308, 1315 (S.D.Fla.2011) (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir.2004)).

4. Despite the organizational problems with the Complaint outlined above, the Court structures this discussion in accordance with the Parties' arguments.

*hama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir.1989).

Celebrity argues that the Complaint does not plead the correct duty of care or a failure to warn because it contains no facts suggesting that Celebrity had actual or constructive notice about the dangers of the WRAVE zip-line ride. Without actual or constructive notice, Celebrity contends, there can be no duty of care under federal maritime law and hence no negligence claim based on a failure to warn theory. The Court agrees.

In this District, courts regularly dismiss negligence claims pursuant to *Keefe's* requirement that a defendant cruise line must have had actual or constructive notice of the danger claimed by a plaintiff. *See, e.g., Brown,* 202 F.Supp.3d at 1339, 2016 WL 4613385, at *3 (dismissing failure to warn claim where "Plaintiff has failed to allege any facts from which it may be inferred [the cruise line] knew or should have known of any dangerous or unsafe condition associated with the subject excursion"); *Gayou,* 2012 WL 2049431, at *4–6; *Lapidus v. NCL America LLC,* No. 12–21183–CIV, 2012 WL 2193055, at *2–4 (S.D.Fla. June 14, 2012) (dismissing negligence claim against cruise line where "there [were] no allegations as to any prior practices or behavior of the Excursion Entities that would have put [the cruise line] on notice of unreasonable dangers associated with the excursion"); *Gibson v. NCL (Bahamas) Ltd.,* No. 11–24343–CIV, 2012 WL 1952667, at *5 (S.D.Fla. May 30, 2012) (dismissing negligence claim against cruise line where complaint was "devoid of any factual allegations describing the 'Jungle Bus' [excursion] and whether [the cruise line] knew that there was no safe way to board it"); *see also Koens v. Royal Caribbean Cruises, Ltd.,* 774 F.Supp.2d 1215, 1220 (S.D.Fla.2011) ("merely pleading the existence of ... duties without providing a factual basis for their imposition is insuffi-

cient to state a cause of action"). For example, in *Gayou,* the court dismissed a negligence claim against Celebrity by a passenger who was injured after he struck a tree during a zip-line shore excursion in Costa Rica. Plaintiff Gayou's complaint was very similar to Ceithaml's Complaint: Gayou alleged that Celebrity's "[s]hore excursions are ... a substantial part of the cruise vacations aggressively promoted and sold by Celebrity to its passengers" and that Celebrity "derives substantial income from marketing and selling excursions to passengers on its cruise ships." *Gayou,* 2012 WL 2049431, at *1. Celebrity represented on its website that the specific ride Gayou took was "built with double steel cables, a twin pulley system and the safest rope breaking [sic] system." *Id.* And Gayou claimed that "[p]rior to taking the excursion, he ... spoke with an attendant at Celebrity's excursion desk and was further advised ... that the excursion was indeed safe and had the 'safest' braking system." *Id.,* at *2. Gayou claimed that he relied on these representations when purchasing a ticket to the ride, but that the brakes failed, causing his injuries. *Id.* The court dismissed Gayou's negligence claim because while Gayou alleged a "laundry list" of breaches, he offered no facts "from which it may be inferred that Celebrity either knew or should have known of any dangerous or unsafe condition associated with the zip-lining excursion." *Id.,* at *4–5 (emphasis in original) (citing *Koens,* 774 F.Supp.2d at 1220; *Isbell,* 462 F.Supp.2d at 1237).

Like the complaint in *Gayou,* Ceithaml's Complaint contains no facts supporting the inference that Celebrity knew or should have known the WRAVE zip-line ride was unsafe. Although Ceithaml alleged that WRAVE's zip-line ride used untrained workers, had a small landing platform, and featured deficient brakes, she does not allege facts—such as man-

agement problems or prior complaints—indicating that Celebrity knew or should have known about these conditions. Further, Celebrity's general representation that all of its excursions "adhere to the highest safety standards" is less specific than Celebrity's representation in *Gayou* that the plaintiff's ride had the "safest rope breaking [sic] system"—which that court found insufficient to support the actual or constructive notice needed to state a negligence claim under federal maritime law. *See id.*, at *2.

In response, Ceithaml points to Celebrity's representation that its excursions "are planned by insured partners who adhere to the highest safety standards in the industry," argues that this statement gives rise to a supposed "duty to verify" (DE 11 ¶¶ 20), and lists 34 ways in which Celebrity allegedly breached this duty (DE 1 ¶ 54). But Ceithaml cannot state a valid claim for negligence under federal maritime law by baldly alleging the existence of a duty and then listing in conclusory fashion the myriad ways in which Celebrity breached that duty. *See Brown*, 202 F.Supp.3d at 1338, 2016 WL 4613385, at *3 (dismissing negligence claim where "many of the alleged breaches are contradictory to each other and are unsupported by law in that they attempt to impose a heightened duty upon . . . the shipowner"); *Thompson*, 174 F.Supp.3d at 1341, 2016 WL 1242280, at *9 (dismissing negligence claim where plaintiff's allegations were "conclusory and lack any factual support"). Consequently, the Complaint does not adequately state a claim for negligence. *See Brown*, 202 F.Supp.3d at 1337–40, 2016 WL 4613385,

at *2–3; *Gayou*, 2012 WL 2049431, at *4–6; *Lapidus*, 2012 WL 2193055, at *2–4; *Gibson*, 2012 WL 1952667, at *5; *Koens*, 774 F.Supp.2d at 1220. "[A]lleged breaches, and the duties associated therewith, must be consistent with federal maritime law and must be supported by underlying factual allegations." *Gayou*, 2012 WL 2049431, at *6.

■ The same result obtains to the extent that Count 1 attempts to bring a claim for Celebrity's negligent hiring and retention of WRAVE.[5] "To state a claim for negligent hiring or retention against a shipowner, a plaintiff must plead that the excursion company 'was incompetent or unfit to perform the work, that the [shipowner] knew or reasonably should have known of the particular incompetence or unfitness, and that such incompetence or unfitness proximately caused his injuries.'" *Brown*, 202 F.Supp.3d at 1339, 2016 WL 4613385, at *4 (quoting *Gayou*, 2012 WL 2049431, at *5). As discussed, Ceithaml has not done so and the Court dismisses Count 1 without prejudice.

**2. Count 2: Negligent Misrepresentation**

■ Ceithaml also alleges that Celebrity negligently misrepresented the safety of the WRAVE's zip-line ride. (DE 1 ¶¶ 58-68). These allegations, however, do not meet the heightened pleading standard applicable to this cause of action. To state a claim for negligent misrepresentation under Florida law, Ceithaml must allege:

■ (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as

5. The Court cannot determine whether Ceithaml is advancing such a claim. Ceithaml's response to the motion to dismiss suggests that she is not, as she asserts that "Count I of Plaintiff's Complaint is a single, facially plausible negligence claim." (DE 11 ¶ 27). Nonetheless, some of the conclusory breach allegations (*see, e.g.*, DE 1 ¶ 54b) appear to implicate negligent hiring and retention. Because the Court is dismissing the Complaint, should Ceithaml wish to re-plead a negligent hiring and retention claim, she should separately allege this as an independent cause of action. *See Gayou*, 2012 WL 2049431, at *11 n. 2.

to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Holguin v. Celebrity Cruises, Inc.*, No. 10–20215–CIV, 2010 WL 1837808, at \*1 (S.D.Fla. May 4, 2010) (citing *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1355 (S.D.Fla.2009)). Moreover, Federal Rule of Civil Procedure 9(b) applies to negligent misrepresentation claims to "alert[ ] defendants to their precise misconduct and protect[ ] defendants against baseless charges of fraudulent behavior." *See Holguin*, 2010 WL 1837808, at \*2 (citing *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988)). Thus, to pass Rule 9(b) muster, the Complaint must set forth particular allegations about the "who, what, when, where, and how" of the fraud. See *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir.2006) (citation omitted).

The allegations that are the basis for Ceithaml's negligent misrepresentation claim do not satisfy this Rule 9(b) standard. On this point, the decision in *Gayou* is again instructive. Like Gayou, Ceithaml alleges "that Celebrity made certain false statements and misrepresentations in promotional materials, on its website, and during the cruise regarding the safety of the zip-lining excursion, upon which [the plaintiff] reasonably relied, and which proximately led to the injuries [she] sustained upon crashing into a tree during the excursion." *Gayou*, 2012 WL 2049431, at \*6. However, Gayou, unlike Ceithaml, identified personal details about the people who he claimed made misrepresentations about the safety of his zip-line ride. *Id.*, at \*2. The court in *Gayou* acknowledged that these sorts of allegations were potentially sufficient to state a claim for negligent

misrepresentation because "a cause of action for negligent misrepresentation is not contingent on the representor having actual or constructive knowledge of falsity; such a claim may also be stated where 'the representor made the misrepresentation ***without knowledge*** as to its truth or falsity.'" *Id.*, at \*8 (quoting *Fojtasek*, 613 F.Supp.2d at 1355) (emphasis added by *Gayou* court). Nevertheless, the court found that Gayou did not allege facts in support of his negligent misrepresentation claim with particularity. For example, he did not identify the precise times at which Celebrity made the misrepresentations. *Id.*, at \*7 (citing *McLaren v. Celebrity Cruises, Inc.*, No. 11–23924–CIV, 2012 WL 1792632, at \*10 (S.D.Fla. May 16, 2012)). This lack of particularity led the court to dismiss Gayou's negligent misrepresentation claim pursuant to Rule 9(b). *Id.*, at \*8.

Here, as in *Gayou*, Count 2 does not meet the Rule 9(b) standard. Like Gayou, Ceithaml does not allege when Celebrity made the representation on its website, nor the time of day that she spoke to Celebrity personnel at the excursion desk on December 9, 2014. *See id.*, at \*7 (citing *McLaren v. Celebrity Cruises, Inc.*, No. 11–23924–CIV, 2012 WL 1792632, at \*10 (S.D.Fla. May 16, 2012); *Weitz v. Celebrity Cruises, Inc.*, No. 10–20267–CIV, 2010 WL 1882127, at \*1 (S.D.Fla. May 11, 2010)). In fact, Ceithaml pleads with even less particularity than Gayou; she does not identify the precise statements that Celebrity made to her (claiming merely that the personnel "confirmed" the statement on Celebrity's website that the WRAVE zipline "adhere[d] to the highest safety standards in the industry") and provides no facts about the person at the excursion desk who allegedly made misrepresentations to her. Without particularized allegations about the timing, source, and precise content of the statements on which Ceithaml relied in purchasing her zip-line ticket,

Count 2 does not satisfy Rule 9(b) and the Court dismisses Count 2 without prejudice.

### B. Vicarious Liability Claims

As noted above, Ceithaml separated three theories of vicarious liability into distinct causes of action. The Court again observes that contrary to Ceithaml's statements (DE 1 ¶¶ 70, 82, 90), there are no independent causes of action for "Joint Venture," "Actual Agency," or "Apparent Agency." *See Barabe*, 359 Fed.Appx. at 84 (affirming district court's finding that there is no independent "Joint Venture" or "Agency Relationship" causes of action). However, interpreting the Complaint in the light most favorable to Ceithaml, the Court considers Counts 3, 4, and 5 as raising negligence claims and examines the sufficiency of the three theories of vicarious liability.

#### 1. Count 3: Joint Venture

 Ceithaml's first theory of Celebrity's vicarious liability for WRAVE's negligence (DE 1 ¶¶ 69-80) is based on her assertion that Celebrity and WRAVE were engaged in a joint venture that is "evidenced orally and in writing by agreements and communications" (DE 1 ¶ 71). The Eleventh Circuit recognizes several "signposts" or "likely indicia" that suggest the existence of a joint venture such that one defendant may be held vicariously liable for the negligent acts of a joint venture partner. *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 211 (11th Cir.1991). These include (1) the intention of the parties to create a joint venture; (2) joint control or right of control; (3) joint proprietary interest in the subject matter of the joint venture; (4) the right of all venturers to share in the profits; and (5) the duty of both to share in the losses. *See Hung Kang Huang v. Carnival Corp.*, 909 F.Supp.2d 1356, 1361 (S.D.Fla. 2012) (citing *Skeen v. Carnival Corp.*, No. 08–22618–CIV, 2009 WL 1117432, at *3 (S.D.Fla. April 24, 2009)), *abrogated on other grounds, Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1250 n. 18 (11th Cir.2014). Of these, the Eleventh Circuit in *Fulcher* noted that "[t]he parties' intentions are important" in determining whether a joint venture exists. 935 F.2d at 211 (quoting *Sasportes v. M/V SOL DE COPACABANA*, 581 F.2d 1204 (5th Cir. 1978)).

Although Ceithaml posits that Celebrity and WRAVE entered a joint venture, Celebrity rejects this premise, pointing to a provision in its written Tour Operator Agreement[6] with WRAVE:

> Operator [WRAVE]'s relationship with Cruise Line [Celebrity] during the term

---

**6.** Celebrity attached its written Tour Operator Agreement with WRAVE to its motion to dismiss. (DE 9-1). It is beyond peradventure that the Court may consider this undisputed document, central to and referenced in the Complaint, without converting Celebrity's motion to dismiss into a motion for summary judgment. *See, e.g., Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005) ("Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*.") *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002) (a court may consider documents central to the plaintiffs' claim and undisputed under the incorporation by reference doctrine without converting the motion into summary judgment); *Gross v. White*, 340 Fed.Appx. 527, 534 (11th Cir.2009) (finding no error in the district court's consideration of a document referenced in the second amended complaint but attached only to the plaintiff's opposition to a motion to dismiss); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997) ("Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").

of this agreement shall be that of an Independent Contractor. Operator shall not have, and shall not represent that it has, any power, right, or authority to bind Cruise Line or to assume or create any obligation or responsibility, express or implied, on behalf of Cruise Line or in the Cruise Line's name. The terms herein shall not be deemed exclusive to Operator and nothing related in this agreement shall be construed as constituting Operator and Cruise Line as partners, or as treating the relationships of employer and employee, franchisor and franchisee, master and servant or principal and agent or joint venture between the parties hereto.

(DE 9-1 at 1 ¶ 9). The import of this unambiguous provision was confirmed in *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-CIV, 2013 WL 1296298, at *6 (S.D.Fla. Mar. 27, 2013), where another court of this District, presented with identical contractual language, granted a motion to dismiss a negligence claim based on a purported joint venture. There, the court declined to recognize the existence of a joint venture, reasoning that the defendant cruise line had no intent to enter a joint venture because it had disclaimed such intent in the contract.[7] *Id.*

Ceithaml responds by arguing that in light of all the circumstances alleged, she has stated a claim for negligence based on a joint venture theory of liability. For support, she relies primarily on this Court's decision to deny a motion to dismiss a negligence claim based on a joint venture in *Aronson v. Celebrity Cruises, Inc.*, No. 12-cv-20129, 30 F.Supp. 2d 1379 (S.D.Fla.

2014). However, *Aronson* is distinguishable because there, the Parties did not submit any type of agreement between the cruise line and the excursion operator for the Court's review.

Ceithaml also argues that she has pled all the "signposts" suggesting the existence of a joint venture. However, she has done so only in conclusory fashion and without predicate facts to support her assertions. Indeed, the Complaint contains no facts suggesting that Celebrity ever intended to enter a joint venture with WRAVE. Thus, Ceithaml does not adequately allege the existence of a joint venture and cannot hold Celebrity vicariously liable for WRAVE's negligence under a joint venture theory. *See Zapata*, 2013 WL 1296298, at *6; *Skeen*, 2009 WL 1117432, at *3 (dismissing joint venture claim where "Plaintiff fail[ed] to assert that the parties intended to enter into a joint venture"). If Ceithaml chooses to file an amended complaint, she may plead details regarding the oral evidence—summarily alleged in the Complaint—of Celebrity's joint venture agreement with WRAVE.

### 2. Count 4: Apparent Agency

Ceithaml's second theory of negligence based on vicarious liability is that Celebrity held out WRAVE as its agent, creating an apparent agency relationship. (DE 1 ¶¶ 81-88). At the outset, the Court finds that because Ceithaml failed to state a plausible negligence claim, her "apparent agency" claim also fails. *Brown*, 202 F.Supp.3d at 1340, 2016 WL 4613385, at *4 (dismissing "apparent agency" claim where court had already found that plaintiff failed

---

7. Likewise, in *Wolf*, the plaintiff—faced with the identical language at a later stage in the litigation—argued that "the objective facts, without regard to the parties' stated relationship in the contract," precluded summary judgment for the cruise line. 101 F.Supp.3d at 1310. The court disagreed and granted summary judgment for the cruise line, explaining

that "[w]hile two parties can create a joint venture notwithstanding a prior written contract ... the Agreement in this case clearly manifests Celebrity's intent that [the excursion operator] not be construed as anything more than an independent contractor." *Id.* (citing *Davidson v. Enstar Corp.*, 848 F:2d 574, 578 (5th Cir.1988)).

to state a plausible negligence claim); *Zapata*, 2013 WL 1296298, at *5 ("I already have determined that the insufficiency of Plaintiff's factual allegations warranted the dismissal without prejudice of Plaintiff's negligence claim. Accordingly, Plaintiff's apparent agency claim must be dismissed without prejudice as well."). Dismissal is also warranted because there are no facts to support the underlying negligence claim against WRAVE. *See Thompson*, 174 F.Supp.3d at 1343, 2016 WL 1242280, at *11 ("While Thompson lists numerous ways that the Excursion Entities violated the reasonable standard of care, there are no factual allegations linking those alleged failures to his injury, and thus this apparent agency claim cannot stand.") (citing *Flaherty*, 2015 WL 8227674, at *6)). Ceithaml's conclusory recital of the many ways that WRAVE failed to meet the reasonable standard of care (DE 1 ¶¶ 29-34, 85) are not factual allegations that link these failures to Ceithaml's specific injury.

It should be noted, however, that Ceithaml has pleaded sufficient facts to allege an apparent agency relationship between Celebrity and WRAVE. *See Brown*, 202 F.Supp.3d at 1340–41, 2016 WL 4613385, at *5 (dismissing apparent agency cause of action while allowing that facts alleged were sufficient to withstand a motion to dismiss if successfully re-plead as a negligence claim) (citing *Gayou*, 2012 WL 2049431, at *10). These facts include that Celebrity "bombarded" Ceithaml with "a series of internet, brochure, and other media, all of which advertised the availability and safety of various" excursions; repre-sented on its website that excursions are planned by "partners"; maintained a "shore excursion desk" aboard the vessel; never identified WRAVE as the owner and operator of the excursion; offered the excursions through passengers' accounts with the cruise line; arranged for transport to the excursion; and integrated excursions into the cruise vacation experience. (DE 1 ¶¶ 12h, 14, 83). Several other courts of this District have found similar factual allegations sufficient to support a negligence claim under an apparent agency theory of liability. *See, e.g., Aronson*, 30 F.Supp.3d at 1396–97; *Gayou*, 2012 WL 2049431 at *8–9; *Zapata*, 2013 WL 1296298 at *5; *Lapidus*, 2012 WL 2193055 at *5; *Gibson*, 2012 WL 1952667 at *7.

Celebrity argues that Ceithaml's apparent agency theory, even if successfully pled as a negligence claim, must fail because the shore excursion ticket, shore excursion brochure, and passenger ticket contract all release Celebrity from liability. However, consideration of these releases would be premature at the motion to dismiss stage [8] as the release of liability is more properly considered an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1).

### 3. Count 5: Actual Agency

■ Similar to Ceithaml's claim that Celebrity and WRAVE had a joint venture, she also claims that WRAVE was Celebrity's actual agent, rendering Ceithaml vicariously liable for WRAVE's negligence. (DE 1 ¶¶ 89-97). However, Ceithaml has alleged no facts that support an agency relationship and Celebrity's Tour Oper-

---

**8.** Generally, a court may not consider anything beyond the face of the complaint and any documents attached thereto in deciding a motion to dismiss. *See Financial Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir.2007). There is an exception to this rule, however, where the plaintiff refers to a document in its complaint, the document is central to the plaintiff's claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss. *Id.* Although the Complaint references Celebrity's website (DE 9-2) (which contains the passenger ticket contract), the shore excursion brochure (DE 9-3), and the shore excursion ticket (DE 9-4), these documents are not so central to her claim as to compel the Court to consider them at this stage of the litigation.

ator Agreement with WRAVE contradicts Ceithaml's conclusory statements to that effect.

■ To state a negligence claim premised on actual agency, Ceithaml must establish an actual agency relationship, which "requires (1) an acknowledgment by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control over the agent's actions by the principal." *Wolf*, 101 F.Supp.3d at 1310 (citing *Fojtasek*, 613 F.Supp.2d at 1357). Ceithaml makes several conclusory allegations about an "agency relationship between" Celebrity and WRAVE. (DE 1 ¶ 91; *see also* DE 1 ¶¶ 94, 95). In support, however, she points only to facts that do not go to the elements of actual agency: Celebrity's identification of WRAVE as a "partner" on its website, Celebrity's advertising of WRAVE's excursions, and "oral agreements" and "written communications and the written contract" about which Ceithaml alleges no details. (DE 1 ¶¶ 92, 93). Instead, like the plaintiff in *Gayou*, Ceithaml "parrot[s]" the elements of an actual agency relationship by offering conclusory allegations regarding the ship's control over the operations of the excursion company. *See Gayou*, 2012 WL 2049431, at *10. Moreover, the language of the Tour Operator Agreement—"Operator shall not have, and shall not represent that it has, any power, right or authority to bind Cruise Line or to assume or create any obligation or responsibility, express or implied, on behalf of Cruise Line"—suggests that Celebrity never intended or acknowledged that WRAVE would act as its agent. (DE 9-1 at 1 ¶ 9). However, given Ceithaml's allegations of unspecified "oral agreements" regarding an agency relationship between Celebrity and WRAVE, Ceithaml may plead additional details about these agreements if she chooses to file an amended complaint.

## IV. CONCLUSION

For the reasons above, and pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Celebrity's motion to dismiss (DE 9) is **GRANTED.** The Complaint (DE 1) is **DISMISSED WITHOUT PREJUDICE.** Ceithaml shall file any amended complaint by **October 4, 2016.**

**DONE AND ORDERED** in chambers in Miami, Florida, this 14th day of September, 2016.